# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ROBERT ERVIN,   *

Plaintiff,   *

v.   *   Civil Action No. ELH-18-107

RICKY FOXWELL, *Warden of E.C.I.* and   *
ROBERT TROXELL, *CDM*,
  *

Defendants.

\*\*\*

## MEMORANDUM OPINION

This case arises from an isolated error at a Maryland prison on October 25, 2017, which resulted in the provision of sausages to inmates at breakfast that contained 2% or less of pork stock.

The self-represented plaintiff, Robert Ervin, is an inmate currently housed at Eastern Correctional Institution ("ECI") in Westover, Maryland. He brings this civil action pursuant to 42 U.S.C. §1983 against Warden Ricky Foxwell and Certified Dietary Manager Robert Troxell, defendants. ECF 1. Ervin seeks compensatory and punitive damages of $3,000,000 for defendants' alleged violation of his constitutional rights under the First Amendment. *Id.* at 3.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 13. The motion is supported by a legal memorandum (ECF 13-1) (collectively, the "Motion") and several exhibits. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Ervin was informed by the court that, *inter alia*, the failure to file a response in opposition to the defendants' Motion could result in dismissal of the Complaint. ECF 14. Ervin did not respond.

Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' Motion, construed as a motion

for summary judgment, shall be granted.

## I. Factual Background

Ervin states that on October 25, 2017, while he was incarcerated at ECI, he ate breakfast, consisting of what he believed to be maple sausage links. ECF 1 at 2.[1] Later that day, Ervin was informed by an inmate who had helped to prepare breakfast that the sausages were "pork sausages." *Id.* Ervin claims that he "has practiced Christianity his entire life" and that consuming pork is against his religion. *Id.* He "immediately filed an ARP [Administrative Remedy Procedure] complaining that Maryland Department of Corrections is prohibited from serving pork products" and that "ECI and its dietary department has violated his First Amendment right to practice his religion." *Id.*; *see* ECF 1-2. As a result of the occurrence, Ervin claims that he has suffered psychologically, mentally, and spiritually. ECF 1 at 2.

In his Declaration (ECF 13-3), Troxell avers that Ervin never submitted any written request for a non-pork diet on the basis of his Christian faith. *Id.* at ¶ 5. During Ervin's incarceration at ECI, Ervin signed and dated three Religious Preference Registration forms, each of which included a staff witness signature, informing ECI staff of the faith group that Ervin intended to practice. ECF 13-2 at 14-16. In 2011 and 2013, Ervin selected item "9010 None," indicating that he did not intend to practice a religion. *Id.* at 14, 16. In 2012, Ervin selected item "0331 Nation of Islam, Farrakhan" as the religion he intended to practice. *Id.* at 15. At no time did Ervin select item "1500 Rastafari," which was listed as an option on the 2011 and 2012 Religious Preference Registration forms. *See id.* at 14-15. To Troxell's knowledge, during the 27 years of his tenure in the Correctional Dietary department, no inmate, apart from Ervin, has ever requested a non-pork diet on the basis of a purported Christian faith. ECF 13-3, ¶ 5.

---

[1] All citations reflect the electronic pagination.

Troxell maintains that, in accordance with the policy of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), "no prison inmate food items of any kind may contain any pork or pork by-products out of general consideration of established Muslim and Jewish religious dietary restrictions, which forbid consumption of any pork[.]" *Id.* ¶ 3. Moreover, "[c]ertified Halal and Kosher diets are provided for Muslim and Jewish inmates, respectively, on the basis of widely recognized and established Muslim and Jewish religious convictions." *Id.* ¶ 4. However, those religious diets are "only provided to inmates who submit a written dietary request and have been approved by the prison chaplain once the chaplain has interviewed them individually to ascertain the veracity and sincerity of their respective religious faiths to warrant accommodation of a religious diet rather than the general population meals." *Id.*

It is clear that, at the relevant time, the DPSCS did not order sausages with any pork. An Invoice dated September 27, 2017, reflects that ECI contracted to purchase 192 cases of turkey maple sausage links from a commercial food vendor. ECF 13-2 at 2. Notably, the Invoice expressly states, in part: "Sausage, Turkey Maple Link . . . ." *Id.* Payment was due by October 27, 2017. *Id.* And, the Purchase Requisition (*id.* at 3) indicates an "Item Description" of "Turkey Sausage Links." Further, the "Receiving Report" describes the "articles" as "Turkey Sausage links." *Id.* at 4.

Of relevance, all commercial vendors supplying inmate food items to ECI are explicitly informed prior to sale that any food items must not contain any pork or pork by-products, in accordance with DPSCS policies. *See* ECF 13-3, ¶ 6. Troxell avers that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Defendants also expect ECI staff to comply with the Directives and ECI

3

policies regarding inmate meals. *Id.* at ¶ 7; ECF 13-5, ¶ 3. Defendants do not dispute, however, that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 13-1 at 4.[2]

On November 14, 2017, Ervin filed an Administrative Remedy Procedure ("ARP") complaint ECI-2971-17, complaining that by serving pork at breakfast on the date in question, ECI staff violated his First Amendment right to practice his religion. ECF 13-2 at 5-8. Ervin stated that his "way of life is Rastafarian, which is Christianity based." *Id.* at 6. He sought, *inter alia*, monetary compensation. *Id.* at 8.

When responding to an ECI inmate's ARP complaint, Defendant Foxwell relies on the review and investigation by the staff. ECF 13-5, ¶ 4. During the investigation of Ervin's ARP complaint by ECI staff, a correctional officer assigned to the "feed up" meal duty for October 25, 2017, provided a statement indicating that, to the officer's knowledge, no pork products were purchased or served in the DOC [Division of Correction], that the food item in question was turkey sausage, and that eggs were available if any inmate wanted a substitute. ECF 13-2 at 13.

On December 6, 2017, Foxwell provided the following response to Ervin's ARP complaint, *id.* at 5:

> Your request for Administrative Remedy has been investigated and is Meritorious in Part; upon review of reports from staff and supporting documentation, it has been determined that sausage that contained 2% or less dehydrated pork stock on 10/25/17. This was served as an oversite [sic] by multiple departments and the vendor. This product has been pulled and will not be served in the future. Eating of pork products does not cause health issues. Staff has been advised to check labels prior to serving.

On December 27, 2017, Ervin's appeal of his ARP complaint to the Commissioner of Corrections was dismissed. ECF 13-2 at 10. The DOC Commissioner stated, *id.*: "You were

---

[2] Eggs were available upon request. ECF 13-2 at 13.

4

advised in the response from the warden that staff was advised to check labels prior to serving. The remedy you seek will not be provided. No further action will be taken through the ARP process."

There is no record that Ervin filed any further appeal of his ARP complaint with the Inmate Grievance Office ("IGO"). *See* ECF 13-4.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds

that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Gordon v. CIGNA Corp.*, ___ F.3d ___, 2018 WL 2209305, at *10 (4th Cir. May 15, 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that

7

the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed.Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477

9

U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

In their Motion, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6), or summary judgment under Rule 56. They argue that (1) they are entitled to qualified immunity; (2) they did not personally participate in the alleged wrongdoing; (3) no First Amendment violation occurred, because no ECI regulation interferes with Ervin's practice of his religion; (4) Ervin did not suffer physical injury and therefore cannot recover for emotional harm; (5) no due process violation occurred based on a violation of DPSCS's policies and procedures; (6) Ervin has no constitutional right to criminal prosecution of defendants; and (7) Ervin has failed to exhaust his administrative remedies. ECF 13-1.

To be sure, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (*per curiam*)). Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion. *Cruz*, 405 U.S. at 322. This includes the "right to a diet consistent with [the inmate's] . . . religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). A prison official violates this right if he intentionally, and without

10

adequate justification, denies an inmate a diet that is religiously mandated. *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, "[o]nly intentional conduct is actionable under the Free Exercise Clause" of the First Amendment. *Lovelace*, 472 F.3d at 201. The Fourth Circuit has held that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.* Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.*[3]

Here, Ervin failed to inform defendants of the religion he sought to practice. He has also failed to assert a conscious or intentional interference with his right to practice his religion.

First, Ervin made no effort either to inform ECI staff of his Rastafarian belief requiring him to abstain from eating pork, or to request a religious diet based upon that belief. ECF 13-2 at 14-15. Although Ervin selected "Nation of Islam, Farrakhan" as the religion he intended to practice in 2012, *id.* at 15, he changed his selection a year later by selecting "None" in 2013, indicating that he did not intend to practice a religion. *Id.* at 16.

Second, there is not a shred of evidence of intentional conduct on the part of defendants. Although defendants do not dispute that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017, ECF 13-1 at 4, defendants have demonstrated that ECI staff intended to purchase turkey maple sausage links from a commercial food vendor, ECF 13-2 at 2-4, and that they explicitly informed the vendor prior to sale that any food items must not contain any pork or pork by-products, in accordance with DPSCS policies. ECF 13-3, ¶ 6. Defendant Troxell also stated that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* At most, any

---

[3] Similarly, an official's negligent act does not implicate the Due Process Clause. *Lovelace*, 472 F.3d at 201.

oversight on defendants' part amounted to negligence or a plain mistake, which they sought to correct by advising staff, going forward, "to check labels prior to serving." *See* ECF 13-2 at 5.

There is no dispute of material fact. The evidence, when viewed in the light most favorable to Ervin, shows that no First Amendment violation occurred. Therefore, defendants are entitled to summary judgment.[4]

### IV. Conclusion

The court determines that no genuine issue as to any material fact is presented and defendants are entitled to a judgment as a matter of law. Summary judgment shall be entered in favor of defendants by separate Order.

June 1, 2018  
Date

/s/  
Ellen L. Hollander  
United States District Judge

---

[4] In light of the Court's ruling, an analysis of defendants' remaining arguments is not necessary.